HARRY M. VEIX, PLAINTIFF, v. SENECA BUILDING AND LOAN ASSOCIATION OF NEWARK, NEW JERSEY, DEFENDANT.

Decided December 21, 1939.

EDITOR'S NOTE: This case is now printed at the request of the court because of the decision in the same case resulting from an application for reargument. See Veix v. Seneca Building and Loan Association, 18 N. J. Mis. R. 280.

For the plaintiff, *Walter P. Reilly*.

For the defendant, *Francis P. Meehan*.

SMITH, JOSEPH L., S. C. C. This matter comes on a motion of the plaintiff to strike the answers and the separate defenses of the defendant upon the ground that they are in part sham and in part insufficient in law.

The complaint alleges that the plaintiff purchased ten prepaid shares of the defendant company for $2,000, on October 7th, 1931, and that on April 19th, 1932, the plaintiff gave the defendant written notice of the withdrawal of the said shares, and thereafter, again demanded payment of the

withdrawal values of his said shares and the interest due thereon. The plaintiff therefore claims $2,000 with interest.

The complaint anticipated the defense, setting forth that the defendant claims to be operating under *R. S.* 17:12-49 and 17:12-50, and their respective sources and amendments, being the laws of 1932, chapter 92, section 1, and chapter 102, section 1, and the laws of 1935, chapter 59, sections 10 and 11, and the laws of 1936, chapter 118, section 4. The plaintiff, in his complaint, alleges that these acts are unconstitutional in so far as they might affect the plaintiff's rights.

The answer sets forth that the defendant is operating under Order No. 1-A, issued by the Commissioner of Banking and Insurance on March 14th, 1933, made pursuant to the act of March 10th, 1933, and further, that the various acts of the legislature set forth in the plaintiff's complaint, in anticipation of the defense, are not unconstitutional; thus, the motion resolves itself into the question of the constitutionality of the various acts of the legislature regulating the manner of payments of the withdrawal values of shares of building and loan associations, in so far as they might affect the plaintiff's rights, and delegating powers to the Commissioner of Banking and Insurance under which the restrictive orders were issued. It is contended by the defendant that as to the first phase of the question presented, namely: the alleged unconstitutionality of the act of the legislature as an abrogation of contractual rights, the case of *Bucsi* v. *Longworth Building and Loan Association,* 119 *N. J. L.* 120, is controlling. It is true that our Court of Errors and Appeals, in that case, held *Pamph. L.* 1932, *ch.* 102, to be a constitutional legislative enactment. However, by the very reasoning used in that case, the decision would not apply to the present situation, involving as it does, a demand for payment of prepaid shares after proper notice. In discussing the abrogation of the rights of a shareholder, the court, in the Bucsi case, *supra,* stated (at *p.* 125):

"But the statutory right of a member to withdraw from membership and to receive the withdrawal value of his shares and the statutory privilege to sue for the amount if not paid within the time named in the statute, is based upon and

forms a part of the general plan that each member is entitled to equal participation in the assets, *and the statute does not contemplate that the privileges named shall be exercised to defeat equal participation, but that the spirit of the statute being equal participation, the paramount equity is equal participation at all times."* (Italics mine.)

Because of the equality of participation among shareholders, and the endeavor to preserve this equality, the exercise of the police power was considered a reasonable one. In the present case, however, the plaintiff was the holder of prepaid stock, as above noted. His certificate recites that the shares shall bear interest at six per cent. *per annum,* and that the shares may be called in and cancelled at any time, by the association, upon payment of the par value and accrued interest; that in the event of surrender or cancellation, the owner shall receive no more and no less than the par value and accrued interest. It appears then, that the plaintiff, as a holder of prepaid shares, was not a participant in the assets of the association, either in time of liquidation, or in its profits.

The court, in the Bucsi case, *supra,* further recognizes this difference on page 133, and stated:

"The appellant argues that the statute also provides for a preference to holders of matured shares over withdrawing shareholders. The statute gives a priority to a matured shareholder but it only recognizes a preference which the matured shareholder had as a creditor. This court held in *Cunningham* v. *Mutual Building and Loan Association, 72 N. J. L.* 175, 180, that when the maturity of shares has been declared in the manner prescribed by the scheme of the constitution of the association, and that it had been recognized by the association by its officers that thereafter a holder of the matured shares became a creditor of the association, entitled to receive the money, provided the funds arising from the appropriation of one-half the receipts of the association should be sufficient for such payment.

"The statute works no apparent change in the status of a matured shareholder and the preference necessarily only applies to the shareholders whose shares have been matured

in the prescribed manner and who have filed the statutory notice prior to the notice of withdrawal. It leaves the status of the parties unchanged."

The position of the present plaintiff is even stronger than that of the matured shareholder. As a holder of prepaid shares, the obligation between him and the company was definite and limited. He was, in view of the decision in the Bucsi case, *supra,* as this court understands it, a creditor, and to apply the provisions of the legislative act in question to the case of the present plaintiff, would be unconstitutional. It appears therefore, that the restrictive provisions of chapter 102, laws of 1932, cannot constitutionally be applied as against a withdrawing shareholder of prepaid shares in a solvent association.

The next question which arises is whether or not the refusal of the defendant company to make the payment in question is justified, under the restrictive orders of the Commissioner of Banking and Insurance. These restrictive orders were issued under the laws of 1933, chapters 48, 166, 258 and 381, and their amendments and supplements. All of these, in essence, give the Commissioner of Banking and Insurance the power "from time to time to make orders for the purpose of conserving the assets of the building and loan associations of this state, which orders shall have the same force and effect as law and be binding on any and/or all building and loan associations of this state, whereby: (a) to regulate the method of paying the withdrawal value and/or maturity value of shares of any and/or all of such associations." The constitutionality of a similar power granted to the Commissioner of Banking and Insurance, with respect to title companies, was raised in *Smith* v. *National Commercial Title and Mortgage Guaranty Co.,* 120 *N. J. L.* 75. In that case, the court found that under the plan approved by the commissioner, those dissenting from the plan, as did this plaintiff, were not barred from their rights. Therefore, the court was not strictly called upon to decide the constitutionality of the act granting the powers. However, the court did recognize that the issue "would be seriously involved with constitutional entanglements." (Page 81.)

In the case of *Mayor and Council of the City of Hoboken* v. *J. H. Thayer Martin, State Tax Commissioner, et al.,* 122 *N. J. L.* 264; 4 *Atl. Rep.* (2d) 697, decided by our Court of Errors and Appeals, the court found certain powers granted to the State Tax Commissioner as unconstitutional, in that they failed to set up a basic plan or standard to guide or control the State Tax Commissioner in doing the act which he was authorized to do. This same defect is apparent in the legislation *sub judice*.

In *Panama Refining Co.* v. *Ryan,* 293 *U. S.* 388, opinion by Chief Justice Hughes, holding section 9-c of the NRA unconstitutional, the court said (at *p.* 415):

"Section 9(c) does not state whether or in what circumstances or under what conditions, the President is to prohibit the transportation of petroleum, or petroleum products produced in excess of the State's permission. It establishes no criterion to govern the President's course. It does not require any finding by the President as a condition of his action. The Congress in 9(c) thus declares no policy as to the transportation of the excess production. So far as this section is concerned, it gives to the President an unlimited authority to determine the policy and to lay down the prohibition, or not to lay it down, as he may see fit."

And again, in *Schechter Corp.* v. *United States,* 295 *U. S.* 495, Mr. Justice Cardozo (at *p.* 55), in his concurring opinion, laid down the rule (at *p.* 551):

"This court has held that delegation may be unlawful though the act to be performed is definite and single, if the necessity, time and occasion of performance have been left in the end to the discretion of the delegate."

Judged by these rules, the delegation of power in the present case is unlimited, indefinite and uncontrolled, and therefore an unconstitutional delegation of power.

For these reasons, the answer of the defendant attempting to justify the refusal of payment, by force of the statutes and orders hereinabove discussed, does not set forth a legal defense and is therefore insufficient in law, and will be stricken.

An order will be entered accordingly.